**EXHIBIT A**

## DEPOSIT ACCOUNT CONTROL AGREEMENT
### *(With Future Notification)*

WACHOVIA BANK, NATIONAL ASSOCIATION as depositary bank (the "*Bank*"), the Bank's depositary banking customer, LIFE ASSET GROUP, LLC, a Delaware limited liability company (the "*Company*"), and INSCAP MANAGEMENT, LLC, a Delaware limited liability company (the "*Secured Party*") have entered into this DEPOSIT ACCOUNT CONTROL AGREEMENT as of this ___ day of May, 2008 (this "*Agreement*").

### Statement of Facts

The Bank acknowledges that, as of the date hereof, it maintains in the name of the Company the deposit account(s) identified in **Exhibit A** attached hereto and made a part hereof (each an "*Account*"). An Account may be served by one or more lockboxes operated by the Bank, which lockboxes (if any) also are identified on **Exhibit A** (each a "*Lockbox*"). The Account(s) are governed by the terms and conditions of the Company's commercial deposit account agreement published by the Bank from time to time, and with respect to any additional banking service to an Account (*e.g.*, Lockbox), also will be governed by a service description between the Bank and the Company (collectively, with all such services descriptions and/or agreements, the "*Deposit Agreement*").

The Company hereby confirms to the Bank that the Company has granted to the Secured Party a security interest in the following (collectively, the "*Account Collateral*"): (a) the Account(s), (b) the Lockbox(es) and (c) the Items Collateral. "*Items Collateral*" means, collectively, all checks, drafts, instruments, cash and other items at any time received in a Lockbox or for deposit in an Account (subject to specific Lockbox instructions in effect for processing items), wire transfers of funds, automated clearing house ("*ACH*") entries, credits from merchant card transactions, and other electronic funds transfers or other funds deposited in, credited to, or held for deposit in or credit to, an Account.

The parties desire to enter into this Agreement in order to set forth their relative rights and obligations with respect to the Account Collateral. In consideration of the mutual covenants herein as well as other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. **Control of the Account(s)**

(a) The Statement of Facts is incorporated herein by reference. The Bank represents that it is a "bank". The Company confirms and the Bank acknowledges that each Account is a "deposit account". Each party hereto acknowledges that this Agreement is an "authenticated record", and that the arrangements established under this Agreement are intended to constitute "control" of each Account. Each of these terms is used in this Agreement as defined or used in Article 9 of the Uniform Commercial Code as adopted by the State of New York (the "*New York UCC*").

(b) The Company represents and warrants to the Secured Party that **Exhibit A** contains a complete and accurate list of all Accounts and Lockboxes maintained by the Company with the Bank and subject to this Agreement. The Company covenants for the benefit of the Secured Party

1

that the Company shall not instruct the Bank to close any Account without the prior written consent of the Secured Party.  Nothing in this Agreement shall impose upon the Bank any obligation to monitor or assure the Company's compliance with this Section 1(b).

(c)     The Bank confirms that, as of the date of this Agreement, the Bank has not entered into any agreement (other than the Deposit Agreement) with any person pursuant to which the Bank is obligated to comply with instructions from such person as to the disposition of funds in any Account or of other Account Collateral.  During the term of this Agreement the Bank will not enter into any agreement with any person other than the Secured Party pursuant to which the Bank will be obligated to comply with instructions from such person as to the disposition of funds in any Account or of other Account Collateral.

(d)     The Company authorizes and directs the Bank to comply, and the Bank agrees to comply, with all instructions delivered by the Secured Party to the Bank in accordance with and subject to Section 7 of this Agreement and with which the Bank would be obligated contractually to implement under the Deposit Agreement, including directing the disposition of funds in an Account or as to any other matter relating to an Account or other Account Collateral, without further consent by the Company.  The Secured Party's right to give instructions to the Bank regarding any Account Collateral also shall include (but is not limited to) the right to give "stop payment orders" to the Bank for any item presented to the Bank against an Account even if the instruction results in dishonor of the item presented against the Account.

(e)     The Secured Party authorizes and instructs the Bank to: (i) permit the Company to have access to and disposition over the Account(s) and Account Collateral and to otherwise deal with same as provided in the Deposit Agreement; and (ii) act upon the instructions that the Bank shall receive from the Company concerning the Lockbox and other Account Collateral until the implementation by the Bank of the written instruction by the Secured Party to the Bank in the form and text of **Exhibit B** attached hereto and made a part hereof, and completed in full (the "*Notice*"), and  delivered to the Bank in accordance with and subject to the provisions of Section 7 below.  The Bank shall be obligated to implement the Notice only if the Notice: (A) shall be in the form and text of **Exhibit B** and completed in full; (B) shall have attached to it a copy of this Agreement as fully executed (together with all amendments thereto); and (C) shall have been delivered to the Bank in accordance with Section 7 (*provided, however,* the Bank shall be fully authorized, in its exercise of its sole discretion, to implement the Notice even if the conditions of clause (B) shall not have been fulfilled).

(f)     Upon implementation of the Notice by the Bank as provided in Section 7, the Bank shall not permit any officer, agent or other representative of the Company or its affiliates to direct the disposition of funds in any Account, withdraw or transfer any amount from any Account, or otherwise exercise any authority or power with respect to any Account, Lockbox or other Account Collateral.  Upon implementation of the Notice by the Bank, all available funds in any Account shall only be withdrawn or transferred therefrom based on instructions delivered by the Secured Party to the Bank in accordance with Section 7.  Each other instruction that the Secured Party shall deliver to the Bank in connection with an Account or other Account Collateral must be delivered to the Bank in accordance with the provisions of Section 7, and shall either accompany delivery of the Notice by the Secured Party to the Bank or shall be delivered subsequently by the Secured Party to the Bank.  Any instruction by the Secured Party to the Bank to remit or transfer

funds from an Account to any recipient account of the Secured Party or any other recipient account, and which recipient account shall not be an account maintained by the Bank, must only be an instruction to the Bank to remit or transfer funds from the Account via wire transfer in accordance with the Bank's procedures governing wire transfers of funds. The Secured Party shall not instruct the Bank to remit or transfer funds from any Account via ACH.

(g)     Federal Reserve Regulations and Operating Circulars, ACH or other clearing house rules, other applicable law (including, without limitation, the Uniform Commercial Code as adopted by the State in which each respective Account is located as specified in **Exhibit A** (the "*Applicable UCC*")), and the Deposit Agreement also shall apply to the Secured Party's exercise of control over each Account and the Account Collateral and to the performance by the Bank of its obligations under this Agreement. Each of the Company and the Secured Party authorizes and instructs the Bank to supply the Company's or the Secured Party's endorsement, as appropriate, to any Items Collateral that the Bank shall receive for deposit to an Account.

2.     **Statements and Other Account Information**     If so requested of the Bank by the Secured Party in writing, the Bank will send to the Secured Party (in a manner consistent with the Bank's standard practices) at the Secured Party's address specified in Section 7, copies of all Account statements (but not canceled checks) that the Bank is required to send to the Company under the Deposit Agreement. The Bank also shall provide to each of the Company and the Secured Party when so requested (solely as a service to the Company under the Deposit Agreement) copies of Account statements and other Account information, including balances, by telephone and computer communication, to the extent practicable, when requested by the Company or the Secured Party. The Company consents to the Bank's release of all such Account information to the Secured Party. The Bank's liability for its failure to comply with this Section 2 shall not exceed the Bank's cost of providing such information.

3.     **Subordination, Permitted Debits and Returned Items**

(a)     The Bank will not exercise any security interest, lien, right of setoff, deduction, recoupment or banker's lien, or any other interest in or against any Account or any other Account Collateral, and the Bank hereby subordinates to the security interest of the Secured Party any such security interest, lien or right that the Bank may have in or against any Account or other Account Collateral. The subordination by the Bank in the preceding sentence shall not apply to any security interest that the Bank may have as a collecting Bank in any Items Collateral as provided in Article 4 of the Applicable UCC. Notwithstanding the preceding text of this Section 3(a), the Secured Party and the Company agree that the Bank at all times (including following commencement of any bankruptcy or insolvency proceeding by or against the Company) may set off and charge against any Account (regardless of any agreement by the Company to compensate the Bank by means of balances in the Account) all of the following as provided in the Deposit Agreement (each a "*Permitted Debit*"): (i) the face amount of each Returned Item (defined below), (ii) the Bank's usual and customary service charges and fees including, but not limited to, account maintenance fees and funds transfer fees, and (iii) out-of-pocket fees and expenses (including attorneys' reasonable fees) incurred by the Bank in connection with the Account(s) and other Account Collateral as provided in the Deposit Agreement; whether any Permitted Debit shall have accrued or been incurred before or after the date of this Agreement. "*Returned Item*" means any (i) Items Collateral deposited in or credited to an Account before or after the date of

3

this Agreement and returned unpaid or otherwise uncollected or subject to an adjustment entry, whether for insufficient funds or any other reason, and without regard to the timeliness of such return or adjustment or the occurrence or timeliness of any other party's notice of nonpayment or adjustment; (ii) adjustments or corrections of posting or encoding errors; (iii) Items Collateral subject to a claim against the Bank for breach of transfer, presentment, encoding, retention or other warranty under Federal Reserve Regulations or Operating Circulars, ACH or other clearing house rules, or applicable law (including, without limitation, Articles 3, 4 and 4A of the Applicable UCC); and (iv) demand for chargeback in connection with a merchant card transaction. For avoidance of doubt, the Bank's rights under this Section 3(a) or provisions of the Deposit Agreement shall not permit the Bank to set off against and charge an Account as a Permitted Debit any obligation of the Company to the Bank in connection with any (A) deposit account that the Company may have with the Bank and that is not an Account or (B) other agreement between the Company and the Bank; Permitted Debits shall be solely those relating to the Account(s) and Account Collateral.

(b)     If (i) the Bank were unable to set off or charge any Permitted Debit against an Account because of insufficient funds in the Account, or (ii) the Bank were to believe in good faith that any legal process or applicable law prohibited such setoff or charge against an Account, or (iii) the Account were closed, then: (A) the Bank may charge such Permitted Debit to and set off same against any other Account (and other deposit account(s) of the Company maintained with the Bank and that are not subject to this Agreement, if any); and (B) if there were insufficient funds in the Account(s) against which to charge or set off such Permitted Debits, then the Bank shall demand (unless the Bank shall believe in good faith that any legal process or applicable law prohibits such demand) that the Company pay, and the Company shall pay, to the Bank promptly upon the Company's receipt of the Bank's written demand therefor, the full amount of all unpaid Permitted Debits.

(c)     If (i) the Notice shall have been implemented by the Bank, and (ii) there shall be insufficient funds in the Account(s) against which the Bank could charge or set off Permitted Debits, and (iii) the Company shall have failed to pay to the Bank the full amount of unpaid Permitted Debits, then the Bank may demand that the Secured Party pay, and the Secured Party shall pay, to the Bank within ten (10) calendar days of the Secured Party's receipt of the Bank's written demand therefor, the full amount of unpaid Permitted Debits. The obligation of the Secured Party to pay the Bank for any unpaid Permitted Debit shall be limited to the aggregate amount of funds that shall be withdrawn or transferred from the Account(s) pursuant to the Secured Party's instruction(s) to the Bank as contemplated by this Agreement.

4.     **Exculpation of the Bank**

(a)     At all times the Bank shall be entitled to rely upon any communication that the Bank shall receive from (or shall believe in good faith to be from) the Company in connection with the Deposit Agreement and this Agreement. At all times the Bank shall be entitled to rely upon any communication that the Bank shall receive from (or shall believe in good faith to be from) the Secured Party in connection with this Agreement, and the Bank shall have no obligation to investigate or verify the authenticity or correctness of any such communication. The Bank shall have no liability to the Company or the Secured Party for the Bank: (i) not honoring or following any instruction that the Bank shall receive from (or shall believe in good faith to be from) the

Secured Party prior to the implementation of the Notice by the Bank; (ii) honoring or following any instruction the Bank shall receive from (or shall believe in good faith to be from) the Secured Party in accordance with this Agreement; (iii) honoring or following any instruction the Bank shall receive from (or shall believe in good faith to be from) the Company in accordance with this Agreement prior to the implementation of the Notice by the Bank; or (iv) not honoring or following any instruction that the Bank shall receive from (or shall believe in good faith to be from) the Company after implementation of the Notice by the Bank. The Bank shall not be responsible for the validity, priority or enforceability of the Secured Party's security interest in any Account Collateral, nor shall the Bank be responsible to have any knowledge of or for any enforcement of any agreement between the Company and the Secured Party.

(b)   The Bank shall be responsible only for the actual loss that a court having jurisdiction over the Account(s) shall have determined had been incurred by the Company or the Secured Party and caused by the Bank's gross negligence or willful misconduct in its performance of its obligations under this Agreement. The Bank shall have no liability for failure of, or delay in, its performance under this Agreement resulting from any "act of God", war or terrorism, fire, other catastrophe or *force majeure*, electrical or computer or telecommunications failure, any event beyond the control of the Bank, or fraud committed by any third party. Nothing in this Agreement shall create any agency, fiduciary, joint venture or partnership relationship between the Bank and the Company or between the Bank and the Secured Party. Except as specifically required by this Agreement or the Deposit Agreement or applicable law, the Bank shall have no obligation whatsoever to the Company in connection with the subject matter of this Agreement. Except as specifically required by this Agreement or applicable law, the Bank shall have no obligation whatsoever to the Secured Party in connection with the subject matter of this Agreement.

5.   **Indemnification of the Bank**

(a)   The Company hereby indemnifies the Bank and holds it harmless against, and shall reimburse the Bank for, every loss, damage or expense (including attorneys' reasonable fees and expenses, court costs and other expenses) that the Bank shall incur in connection with this Agreement including, but not limited to, (i) all unpaid Permitted Debits, and (ii) every loss, damage or expense that the Bank shall incur as a result of the Bank (A) entering into or acting pursuant to this Agreement, (B) honoring and following any instruction the Bank may receive from (or shall believe in good faith to be from) the Secured Party or the Company under this Agreement, and (C) upon its implementation of the Notice, not honoring or following any instruction that the Bank shall receive from the Company in connection with any Account Collateral. The Company shall not be responsible for any loss, damage, or expense that a court having jurisdiction shall have determined had been caused by the Bank's gross negligence or willful misconduct in its performance of its obligations under this Agreement.

(b)   Without limiting in any way the Secured Party's obligation to pay or reimburse the Bank for unpaid Permitted Debits, the Secured Party hereby indemnifies the Bank and holds it harmless against every loss, damage or expense (including attorneys' reasonable fees and expenses, court costs and other expenses) that the Bank shall incur as a result of its honoring or following any instruction (including the Notice) that the Bank shall receive from (or shall believe in good faith to be from) the Secured Party as provided by this Agreement. The Secured Party's indemnification obligation to the Bank as provided by this Section 5(b) shall be reduced by those

5

amounts that the Company shall have paid to the Bank pursuant to the provisions of clause (ii)(B) of Section 5(a) above; *provided, however,* such reduced indemnification obligation of the Secured Party to the Bank shall be reinstated automatically and to the extent that any amount paid by the Company to the Bank pursuant to clause (ii)(B) of Section 5(a) above shall be required to be disgorged by the Bank. The Secured Party shall not be responsible for any loss, damage, or expense that a court having jurisdiction shall have determined had been caused by the Bank's gross negligence or willful misconduct in its performance of its obligations under this Agreement.

(c)     No party to this Agreement shall be liable to any other party hereto for lost profits or special, indirect, exemplary, consequential or punitive damages incurred in connection with this Agreement, even if such party shall have been advised of the possibility of such damages.

6.     **Third Party Claims Against an Account; Insolvency of the Company**

(a)     If the Bank shall receive notice that any third party shall have asserted an adverse claim by legal process against an Account or funds on deposit therein, any Lockbox, or other Account Collateral, whether such claim shall have arisen by tax lien, execution of judgment, statutory attachment, garnishment, levy, claim of a trustee in bankruptcy, debtor-in-possession, post-bankruptcy petition lender, court appointed receiver, or other judicial or regulatory order or process (each, a "*Claim*"), the Bank may, in addition to other remedies it may possess under the Deposit Agreement, this Agreement or at law or in equity, suspend disbursements from such Account without any liability until the Bank shall have received an appropriate court order or other assurances acceptable to the Bank in its sole discretion establishing that funds may continue to be disbursed according to instructions then applicable to such Account. The Bank's costs, expenses and attorneys' reasonable fees incurred in connection with any Claim are Permitted Debits and shall be reimbursed to the Bank in accordance with Section 3 above.

(b)     If a bankruptcy or insolvency proceeding shall be commenced by or against the Company, the Bank shall be entitled, without any liability, to refuse to (i) permit any withdrawal or transfer from any Account or (ii) implement the Notice or follow any other instruction delivered by the Company or the Secured Party to the Bank until the Bank shall have received an appropriate court order or other assurances acceptable to the Bank in its sole discretion establishing that (A) continued withdrawals or transfers from the Account(s) or the Bank honoring or following any instruction by the Company or the Secured Party shall be authorized and shall not violate any law, regulation, or order of any court and (B) the Bank shall be authorized to set off against or charge any Account and to otherwise be reimbursed for all Permitted Debits.

7.     **The Notice and Other Communications**

(a)     All communications given by any party to this Agreement to another as required or provided by this Agreement must be in writing, directed to the respective party's designated office or officer ("***Designated Office[r]***") identified under Section 7(c) below, and delivered to each recipient party at its address (or at such other address or to such other Designated Office(r) as such party shall designate in writing to the other parties in accordance with this Section 7) either by U.S. Mail, receipted delivery service or via telecopier or "*PDF*" electronic facsimile transmission. All communications given by the Secured Party to the Bank must be addressed and

delivered contemporaneously to both the Bank's Designated Office and the Bank's *"with copy to"* addressee at their respective addresses set forth below.

(b)   Any communication (including the Notice) made by (or believed in good faith by the Bank to be made by) the Company or the Secured Party to the Bank in connection with this Agreement shall be deemed delivered to the Bank only if delivered: (i) by U.S. Mail, on the date that such communication shall have been delivered to the Bank's Designated Office; (ii) by receipted delivery service, on the date and time that such communication shall have been delivered to the Bank's Designated Office and receipted by the delivery service; or (iii) via telecopier or *"PDF"* electronic facsimile transmission, on the date and at the time that such communication shall have been delivered to the Bank's Designated Office and receipt of such delivery shall have been acknowledged by the recipient electronic facsimile equipment. Any communication delivered to the Bank that is an instruction (including the Notice) to the Bank and made by (or believed by the Bank in good faith to be made by) the Company or the Secured Party shall be deemed received by the Bank when actually delivered to the Bank's Designated Office if delivered before 2:00 PM Eastern time on a banking day or, if such communication were delivered after 2:00 PM Eastern time on a banking day or delivered on a day that is not a banking day, then such communication shall be deemed delivered to the Bank's Designated Office at 9:00 AM Eastern time on the next succeeding banking day. A *"banking day"* means any day other than any Saturday or Sunday or other day on which the Bank is authorized or required by law to close.

(c)   The Notice shall be implemented by the Bank by the close of the Bank's business on the banking day that shall be one (1) banking day after the banking day on which the Notice shall have been delivered to the Bank's Designated Office. Any other instruction delivered to the Bank shall be implemented by the Bank by the close of the Bank's business on the banking day that shall be two (2) banking days after the banking day on which such instruction shall have been delivered to the Bank's Designated Office.

| | |
|---|---|
| Address for Secured Party: | InsCap Management, LLC<br>230 Park Avenue, 21st Floor<br>New York, New York 10169<br>Attn.: Harish Raghavan, CEO, Designated Officer<br>Fax:   212.973.0491 |
| Address for Bank: | Wachovia Bank, National Association<br>Mail Code NC 0817<br>301 South Tryon Street – Floor M7<br>Charlotte, North Carolina 28288<br>Attn.: TS Legal Risk Mgmt, Designated Office<br>Fax:   704.374.4224 |
| **with copy to:** | Wachovia Bank, National Association<br>Mail Code FL 6020<br>200 S. Biscayne Boulevard |

7

         Miami, Florida 33131
         Attn: Bijan Toghiani, Assistant Vice President
         Fax: 305.789.5036

Address for Company:  Life Asset Group, LLC
         601 Brickell Key Drive, Suite 511
         Miami, Florida 33131
         Attn.: Gary Brecka, CEO, Designated Officer
         Fax: 305.675.2964

**8. Termination of this Agreement; Closing an Account**

(a) The Secured Party may terminate this Agreement at any time upon receipt by the Bank of the Secured Party's written notice of termination issued in the form and text of **Exhibit C** attached hereto and made a part hereof, and completed in full, together with a copy of this Agreement as fully executed. The Company may terminate this Agreement only with the express prior written consent of the Secured Party and, in that case, the Secured Party and the Company shall jointly so notify the Bank thereof in writing together with a copy of this Agreement as fully executed.

(b) The Bank may terminate this Agreement at any time (i) on not less than thirty (30) calendar days' prior written notice thereof to each of the Company and the Secured Party, or (ii) upon not less than seven (7) calendar days' prior written notice thereof to the Company and the Secured Party if (A) the Company shall have breached the Deposit Agreement or of this Agreement as the Bank shall have determined or (B) the Secured Party shall have breached this Agreement as the Bank shall have determined. The Bank also may close any Account and/ or terminate this Agreement immediately if the Bank shall be instructed to do so by any court or governmental authority having jurisdiction over the Bank or the Account Collateral, or if the Bank shall suspect in good faith that the Account has been or is being used for a fraudulent or illegal purpose. The Bank shall notify the Company and the Secured Party of any such closing of any Account by the Bank unless the Bank shall be prohibited from notifying the Company or the Secured Party by order of such court or governmental authority.

(c) The Bank shall not be responsible for the Company closing any Lockbox or any Account, or for the remittance by the Bank of any funds therein directly to, or on the instructions of, the Company prior to implementation of the Notice by the Bank. The Company shall notify the Secured Party promptly of the Company's closing of any Lockbox or any Account.

(d) The Bank's rights to demand and receive reimbursement from the Company under Sections 3(b), 9(a) and 9(b) hereof and the Company's indemnification of the Bank under Section 5(a) hereof shall survive termination of this Agreement. The Bank's right to demand reimbursement from the Secured Party under Sections 3(c) and 9(a) hereof shall survive termination of this Agreement for a period of ninety (90) calendar days after the date of termination of this Agreement. The Bank's right to demand indemnification of the Bank from the Secured Party under Section 5(b) above shall survive termination of this Agreement for a period of one hundred eighty (180) calendar days after the date of termination of this Agreement. The obligations of the Bank and the Secured Party under Section 9(b) hereof shall survive termination of this Agreement.

## 9. Miscellaneous Provisions

(a) The Company shall pay to the Bank all fees (including, but not limited to, out-of-pocket and allocable internal legal fees) and expenses incurred by the Bank in connection with its negotiation and administration of this Agreement ("**Fees and Expenses**") promptly upon the Company's receipt of the Bank's written demand therefor. The Bank also is hereby authorized to set off and charge Fees and Expenses against the Account(s) (and other deposit account(s) of the Company maintained with the Bank and that are not subject to this Agreement, if any). If the Company shall fail to pay Fees and Expenses and there shall be insufficient funds in the Account(s) (and other deposit accounts of the Company maintained with the Bank and that are not subject to this Agreement, if any) to pay Fees and Expenses, then the Secured Party shall pay to the Bank the full amount of such unpaid Fees and Expenses; *provided, however*, the obligation of the Secured Party to pay the Bank for unpaid Fees and Expenses shall be limited to the aggregate amount of funds that shall be withdrawn or transferred from the Account(s) pursuant to the Secured Party's instruction(s) to the Bank as contemplated by this Agreement.

(b) The Company shall pay to the Bank all fees (including, but not limited to, out-of-pocket and allocable internal legal fees) and expenses incurred by the Bank in connection with any action or proceeding undertaken by the Bank to enforce, or preserve its rights under, any provision of this Agreement against the Company. The Bank also is hereby authorized to set off and charge all such amounts so incurred by the Bank against the Account(s) (and other deposit account(s) of the Company maintained with the Bank and that are not subject to this Agreement, if any). If any action or proceeding shall be commenced by the Bank or by the Secured Party to enforce, or preserve such party's rights under, any provision of this Agreement against the other and: (i) the Bank shall prevail in such action or proceeding, then the Secured Party shall pay to the Bank all fees (including, but not limited to, out-of-pocket and allocable internal legal fees) and expenses incurred by the Bank in connection with such action or proceeding in addition to all other amounts that shall be awarded to the Bank in such action or proceeding; or (ii) the Secured Party shall prevail in such action or proceeding, then the Bank shall pay to the Secured Party all fees (including, but not limited to, out-of-pocket and allocable internal legal fees) and expenses incurred by the Secured Party in connection with such action or proceeding in addition to all other amounts that shall be awarded to the Secured Party in such action or proceeding.

(c) The Company shall not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the Bank and the Secured Party. The Secured Party shall not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the Bank. The Bank shall not assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the Secured Party and the Company, except that the Bank may transfer its rights and obligations under this Agreement to any direct or indirect depositary subsidiary of Wachovia Corporation or, in the event of a merger or acquisition of the Bank, to the Bank's successor depositary institution (which subsidiary or successor shall be a "bank" as defined in Section 9-102 of the New York UCC).

(d) This Agreement shall be governed by the laws of the State of New York (without regard to its conflicts of laws principles). The law governing perfection and priority of the Secured Party's security interest in the Account Collateral shall be the law of the State of New York, which State shall also be the "jurisdiction" of the Bank within the meaning of Section 9-304 of the New York

UCC. The Account(s), Items Collateral, operation of the Account(s), and Deposit Agreement shall be governed by the Applicable UCC, Federal Regulations and Operating Circulars, ACH or other clearing house rules, and other applicable law.

(e)     This Agreement may be executed in any number of counterparts, each of which shall be an original and all of which together shall constitute one and the same Agreement. Delivery of an executed signature page counterpart to this Agreement via telecopier or "*PDF*" electronic facsimile transmission shall be effective as if it were delivery of a manually delivered, original, executed counterpart thereof. This Agreement can be modified or amended only by written agreement of all of the parties hereto evidencing such modification or amendment.

(f)     To the extent that any conflict may exist between the provisions of any other agreement between the Company and the Bank (including the Deposit Agreement) and the provisions of this Agreement, then this Agreement shall control. This Agreement shall not give the Secured Party or any third party any benefit or legal or equitable right, remedy or claim against the Bank under the Deposit Agreement.

(g)     Each of the Secured Party and the Bank shall not cite or refer to this Agreement as precedent in any negotiation of any other Deposit Account Control Agreement to which the Secured Party or any of its affiliates and the Bank shall be parties.

**[THE SPACE REMAINING ON THIS PAGE IS LEFT BLANK INTENTIONALLY.]**

10. **Waiver of Jury Trial**     TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY HERETO IRREVOCABLY WAIVES ITS RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING (INCLUDING ANY COUNTERCLAIM) OF ANY TYPE IN WHICH ANOTHER PARTY HERETO SHALL BE A PARTY AS TO ALL MATTERS DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT.

**IN WITNESS WHEREOF,** each of the parties hereto by its respective duly authorized officer has executed and delivered this Agreement as of the day and year first written above.

**BANK:**          **WACHOVIA BANK, NATIONAL ASSOCIATION**

By _____
Name: _____
Title: _____

**COMPANY:**       **LIFE ASSET GROUP, LLC**

By _____
Name: _____
Title: _____

**SECURED PARTY:** **INSCAP MANAGEMENT, LLC**

By _____
Name: _____
Title: _____

# EXHIBIT A
## ACCOUNT(S) OF THE COMPANY

| Account Number | Related Lockbox Number, if any | Account Name | State in Which Account is Located |
|---|---|---|---|
| PLEASE PROVIDE | | | |

## EXHIBIT B

### [To be Issued on Letterhead of Secured Party]

_____ 20\_\_

WACHOVIA BANK, NATIONAL ASSOCIATION
Mail Code NC 0817
301 South Tryon Street – Floor M7
Charlotte, North Carolina 28288
Attention: TS Legal Risk Mgmt, Designated Office

### NOTICE PURSUANT TO DEPOSIT ACCOUNT CONTROL AGREEMENT

Ladies and Gentlemen:

 Pursuant to the Deposit Account Control Agreement (With Future Notification) among Life Asset Group, LLC (the "Company"), you, and us dated as of May _____, 2008 (the "Agreement"), a fully executed copy of which is attached hereto, this letter shall serve as the Notice as described in and contemplated by the Agreement. Capitalized terms used but not defined in this letter shall have the meanings given them in the Agreement.

 You are hereby instructed not to permit any access to or disposition over the Account(s) or other Account Collateral by, and not to honor or follow any instruction with regard to any Account or other Account Collateral from, any person other than the Secured Party (except as otherwise provided in Section 6 of the Agreement or required by law).

           Very truly yours,

           **INSCAP MANAGEMENT, LLC**

           By _____
           Name: _____
           Title: _____

Attachment
cc: *[insert "with copy to" addressee of the Bank as per Section 7 of the Agreement]*

EXHIBIT C

[To be Issued on Letterhead of Secured Party]

_____20__

WACHOVIA BANK, NATIONAL ASSOCIATION
Mail Code NC 0817
301 South Tryon Street – Floor M7
Charlotte, North Carolina 28288
Attention: TS Legal Risk Mgmt, Designated Office

**LIFE ASSET GROUP, LLC**
_____

_____
Attention: _____, Designated Officer

NOTICE OF TERMINATION OF DEPOSIT ACCOUNT CONTROL AGREEMENT

Ladies and Gentlemen:

We refer you to the Deposit Account Control Agreement (With Future Notification) among Life Asset Group, LLC (the "Company"), you, and us dated as of May _____, 2008 (the "Agreement"), a fully executed copy of which is attached hereto. Capitalized terms used but not defined in this letter shall have the meanings given them in the Agreement.

We hereby notify you that we are exercising our right under Section 8(a) of the Agreement (subject to your rights as set forth in the Agreement) to terminate the Agreement in accordance with its terms. Accordingly, the Agreement shall terminate at the close of the Bank's business [this day] [on _____ __, 20__], subject to those undertakings that shall survive termination of the Agreement.

Very truly yours,

**INSCAP MANAGEMENT, LLC**

By _____
Name: _____
Title: _____

Attachment
cc: [*Insert "with copy to" addressee of the Bank as per Section 7 of the Agreement*]

WachDACA(*wfn*)/BPB/0208

14