UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
CONCORD CAPITAL MANAGEMENT, LLC f/k/a  :
InsCap Management, LLC,                 :
                                       :
                Plaintiff,             :
                                       :            11 Civ. 5545 (DLC)
        -v-                            :
                                       :            OPINION AND ORDER
GARY BRECKA,                           :
                                       :
                Defendant.             :
                                       :
-------------------------------------- x

Appearances:

For the Plaintiff:
Robert Strassberg
Strassberg & Strassberg, P.C.
57 West 38th Street
New York, New York 10018

For the Defendant:
Alison Arden Besunder
Law Offices of Alison Arden Besunder P.C.
60 East 42nd Street, Suite 764
New York, New York 10165

DENISE COTE, District Judge:

        On December 2, 2011, a default judgment was entered against

the defendant Gary Brecka ("Brecka") in the amount of

$929,740.41.  Brecka has filed a motion to vacate the default

judgment pursuant to Federal Rule of Civil Procedure 60(b).  For

the reasons stated below, Brecka's motion is denied.

BACKGROUND

        The proceedings in this court that precipitated the entry

of a default judgment against Brecka are as follows.  On August 10, 2011, Concord Capital Management, LLC ("Concord") filed suit against Brecka to enforce a personal guarantee ("Guaranty Agreement").  The plaintiff personally served the summons and complaint on Brecka on August 20 at 222 Barefoot Beach Boulevard, Bonita Springs, Lee County, Florida 34125 ("Bonita Springs Address").  That same day, Brecka acknowledged receipt of the complaint in an email to Eric Kosta ("Kosta"), an agent of Concord.  Brecka's email read as follows:

> I signed the papers served to me by the court, so that things would not be held up any longer for either of us.  Would you mind sending me a copy of the complaint electronically.  The photocopy from the court does not scan well.

Kosta sent an electronic version of the complaint to Brecka on August 23, which Brecka also acknowledged in an email he sent to plaintiff's counsel Robert Strassberg ("Strassberg") on September 8.  Brecka indicated that he intended to retain New York counsel to represent him in the action.  Brecka's email read as follows:

> I received an electronic copy of the complaint from Eric Kosta on August 23rd, but I sought Florida counsel and now need to retain NY counsel to respond to the complaint.  I am requesting that you grant me an extension period such that I can retain counsel and respond to the complaint.  At one point I did have NY counsel representing me in an earlier action related to Concord, but I do not have NY counsel.
>
> Should I also send this request to the Clerk of the Court?  I really need time to respond to this.

Through an Order of September 2, an initial conference was
scheduled for November 4 at 4:00 p.m.  Strassberg sent a copy of
the Order to Brecka by email and regular mail on September 7.
Brecka responded on September 8 as follows, indicating once more
that he intended to retain counsel and to respond to the
complaint.  The email states:

> I am not sure what the Pre-Trial conference is, but it
> appears to have happened on September 2nd and I was
> totally unaware of this meeting.  I was served on the
> 20th and need more time to retain counsel and respond.
> Because you have the majority of my emails, computers
> and hard drives I am having difficulty even
> reconstructing past events.
>
> If you would kindly confirm an extension for me, I
> will finalize retention of counsel and properly
> respond.  Would you prefer that I send a letter to
> your office with this formal request?

Strassberg responded to Brecka on the same day, correcting
Brecka's misunderstanding regarding the date of the initial
conference, confirming the conference date as November 4, and
informing him that the Court must approve any requested
extension of the time to answer.  Strassberg wrote:

> The Pre-Trial Conference is scheduled for 11/4/11 at
> [sic] set forth in the notice I sent to you.  Another
> copy is attached.
>
> In Federal court, I cannot unilaterally confirm an
> extension of your time to answer.  The court must
> approve any extension, and it is typically
> accomplished by a written request to the court, either
> advising the court of consent or the refusal to grant
> consent.
> If you want an extension, kindly advise me of the date

by which your counsel will file an answer, and I will
advise you whether your request is acceptable.

Brecka and Strassberg continued to exchange emails
regarding this action and Brecka's obligation to communicate
directly with the Court between September 8 and October 4.
Among these emails are communications on September 8 in which
Brecka indicates that he will be finalizing a retainer agreement
with counsel and seeking an extension of his time to answer the
complaint to October 8.  They read:

> From: Gary Brecka
> Sent: Thursday, September 8, 2011
> To: Robert Strassberg
>
> Thank you for the response.  It is the 8th of
> September today and I would expect that a thorough
> response by the 8th of October [sic].  That is 30
> days.  Please advise if this is acceptable and I will
> finalize my retainer with counsel and advise you
> immediately.
>
> From: Robert Strassberg
> Sent: Thursday, September 8, 2011
> To: Gary Brecka
>
> Your request is acceptable.  We will agree to your
> answering the complaint on or before October 8, 2011.
> You or your counsel must confirm this with the court,
> and the court must approve it, or your time to answer
> will not be extended.

On September 19, Brecka wrote that he had spoken to an
attorney about representing him in the action and would be
meeting with the attorney on September 21.  This exchange began
with an inquiry from Strassberg who had not heard from Brecka in
eleven days.  The emails read:

From: Robert Strassberg
Date: Mon, 19 Sep 2011
To: Gary Brecka

I have not received a copy of a letter or other
communication between you and/or your counsel and the
court.  As I advised you in my email of 9/8/11 I would
agree to extend your time to answer <u>provided</u> such an
extension was approved by the court.  <u>Kindly confirm
your request for the extension with the court</u> or I
will be forced to presume that you do not intend to
seek additional time to respond to the complaint, and
will act accordingly.

From: Gary Brecka
Sent: Monday, September 19, 2011
To: Robert Strassberg

How do I confirm my request for the extension with the
court?  I am sorry.  I thought that I only needed you
to agree.  I just returned from the UK last evening
and spoke to Nolan Sheenanhan who represented me in
our last engagement.  Does he now have to apply to the
court for an extension or do I need to provide them
notice?
I am due to meet him Wednesday in NY if our schedules
work.

From: Robert Strassberg
Sent: Monday, September 19, 2011
To: Gary Brecka

Typically it is done by a letter to the Judge
requesting the extension, on notice to the other side,
which may then by [sic] endorsed by the Judge.  This
is something your attorney should do if you are
represented -- and given that you have an attorney
with whom you plan to be meeting, this should be our
final correspondence.
As set forth in my prior correspondence, your
requesting and obtaining the extension from the court
is a condition of my waiting until October 8, 2011 for
an answer.

As this email exchange displays, Strassberg reminded Brecka

three times that if he wished to seek an extension of his time to answer, he must submit a request to the Court.  On October 4, Strassberg informed Brecka that because Brecka had neither requested an extension from the Court nor filed a response to the complaint, Concord would move for a default judgment.

Following this Court's Individual Practices for entry of a default judgment, on October 5, Concord obtained a certificate of default from the Clerk of Court.  On the same day, the Court issued an Order to Show Cause for Default Judgment requiring the parties to appear on December 2 at noon.  The Order directed the plaintiff to serve a copy of the Order on the defendant by email at the address from which Brecka had been communicating with Kosta and Strassberg -- Gary.Brecka@traditionalgroup.com -- and regular mail at 222 Barefoot Beach Boulevard, Bonita Spring, Florida 3435.  The plaintiff served the Order to Show Cause by email, by mail to the address listed in the Court's Order in which the last digit of the defendant's zip code was accidentally omitted, and by mail to the Bonita Springs Address.

Brecka did not appear at the December 2 conference.  At the conference, the Court noted that plaintiff's counsel had filed affidavits of service for the complaint and the Order to Show Cause.  A default judgment was entered against Brecka on December 2, 2011 in the amount of $929,740.41.

On October 19, 2012, over ten months after the default

6

judgment was entered, Brecka filed a motion to set aside the
default judgment pursuant to Rules 55 and 60 of the Federal
Rules of Civil Procedure.  The defendant's motion was fully
submitted on November 21, 2012.

        This action arises out of a business transaction between
Concord and Brecka and Brecka's execution of the Guaranty
Agreement.  Concord is a life insurance premium finance company
with its offices in New York.  It was formerly known as InsCap
Management, LLC.  Brecka served as Concord's Head of
Distribution from May 2008 to October 2009.  From June 2003 to
May 2008, Brecka had been the Chief Executive Officer and
Manager of Life Asset Group LLC ("LAG") a life settlement
brokerage firm.

        On May 2, 2008, LAG entered into an agreement with Concord
entitled "Term Loan and Security Agreement ("TLS Agreement").
The parties dispute whether this transaction was a loan of $2.8
million from Concord to LAG or a stock purchase agreement
whereby Concord agreed to purchase shares of LAG for $2.8
million.  The TLS Agreement was signed by Brecka as LAG's Chief
Executive Officer.  Brecka contends that he was induced to enter
this transaction because Concord agreed to give LAG a 7.5% share
in the proceeds from a premium finance loan facility called
"HSH."  The parties understood, according to Brecka, that the
proceeds from the HSH would be sufficient to repay the $2.8

million "loan."  But, Brecka asserts, HSH was a fictional facility that never came into existence.

On the same day that LAG entered the TLS Agreement, Brecka also signed a Notice of Borrowing and a Promissory Note on behalf of LAG.  Of the $2.8 million provided to LAG through the TLS Agreement, $1.2 million was subject to a Deposit Account Control Agreement ("the Control Agreement").  Pursuant to the Control Agreement, the money was deposited into an account maintained by Wachovia Bank in the name of LAG, with LAG given "access to and disposition over" the account unless Concord submitted written instructions to the bank in conformity with the Control Agreement's requirements.  Concord never submitted written instructions to Wachovia Bank and as a result, control over the account remained with LAG.  Brecka nonetheless contends that Concord had control over the account and that he, the CEO of LAG, never had access to the account's funds.

Brecka executed the Guaranty Agreement on May 2, 2008.  In that document he "irrevocably and unconditionally" guaranteed to Concord "the punctual payment and performance" of LAG's obligations in an amount up to $750,000.  The Guaranty Agreement provided that

> THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN
> ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK . .
> . . ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST
> LENDER OR GUARNATOR ARISING OUT OF OR RELATING TO THIS
> GUARANTY MAY AT LENDER'S OPTION BE INSTITUTED IN ANY

> FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY
> OR NEW YORK . . . AND [BRECKA] HEREBY IRREVOCABLY
> SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY
> SUIT, ACTION OR PROCEEDING.

(Emphasis supplied.)  In the Guaranty Agreement, Brecka also

acknowledged that he had not been induced to execute the

guaranty on the basis of representations made by Concord.

> To induce [Concord] to enter into the Loan Documents
> and extend credit to [LAG], [Brecka] represents and
> warrants to [Concord] as follows:
> . . .
> Neither [Concord] nor any other party has made any
> representation, warranty or statement to [Brecka] in
> order to induce [Brecka] to execute this Guaranty.

LAG, Concord and Brecka also entered into an Option

Agreement ("the Option Agreement").  Under the Option Agreement,

Concord secured two options -- one option to purchase 51% of

LAG's stock for 1% of the outstanding equity interest of

InsCap/Concord and a second option to purchase the remaining 49%

of LAG stock for cash and InsCap's repayment of a portion of

notes under which LAG was obligated to Concord.  Concord never

exercised either option.

During his employment with Concord, Brecka functioned as

the Head of Distribution under a program called the Ultra

Program.  Under the Ultra Program, Concord made premium finance

loans to irrevocable life insurance trusts established by high-

net worth individuals.  In October 2008, Concord and LAG amended

the TLS Agreement and Concord increased its loan to LAG by

$300,000.  Brecka resigned from Concord in October 2009.

In a complaint dated September 14, 2010, Concord and others sued Fifth Third Bank, Bank of America, N.A., and Ira L. Brody, the former Chief Financial Officer of Concord in New York state court ("New York Action").  The complaint in the New York Action alleges "a shocking scheme, involving fraud, forgery, and bribery, in which a renegade group of executives of plaintiff Concord (the "Insiders"), a life insurance premium finance company -- aided and abetted [by] Concord's bank Fifth Third -- looted the assets of Concord."  The New York Action sought recovery of $70 million in compensatory damages and $250 million in punitive damages.  Brecka was not named as a defendant in the New York Action.  Both Concord and Brecka were subsequently sued by Fifth Third Bank in a related but separate action in Illinois ("Illinois Action").[1]

On August 30, 2010, Concord asked Brecka to meet with Richard Kellner ("Kellner"), Concord's agent, and Jason Epstein ("Epstein") a member of Concord's Board of Directors.  Brecka and his attorney met with Kellner and Epstein on August 31 in the New York offices of Concord's counsel.  During the meeting, Kellner and Epstein solicited Brecka's assistance in the New

---

[1] The parties have not provided further information about the Illinois Action, such as when it was filed or the claims it asserts.

York Action and represented that Concord would consider refraining from adding Brecka to that action.  As part of his assistance, Brecka provided Concord's representatives with a laptop computer, certain Concord business records, and a server owned by LAG.  Brecka has not been named as a defendant in the New York Action.

Although Concord did not join Brecka as a defendant to the New York Action, in May of 2011 it formally demanded that Brecka pay the money he owed under the Guaranty Agreement.  As reflected in an email that Kosta later sent to Kellner, when Concord discussed its intention of suing Brecka for breach of the Guaranty Agreement, Brecka "claimed he had no money and would default."  Brecka insists that he did not make this statement.  On August 10, 2011, Concord brought this action against Brecka to enforce the Guaranty Agreement.

DISCUSSION

Brecka seeks to vacate the default judgment entered against him in 2011.  Pursuant to Federal Rule of Civil Procedure 55(c) a court "may set aside a default judgment under Rule 60(b)." Fed.R.Civ.P. 55(c).  Rule 60(b) of the Federal Rules of Civil Procedure enumerates six grounds for vacating a judgment:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

11

> (3) fraud (whether previously called intrinsic or
> extrinsic), misrepresentation, or misconduct by an
> opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or
> discharged; it is based on an earlier judgment that
> has been reversed or vacated; or applying it
> prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed.R.Civ.P. 60(b).

When deciding to vacate a default judgment under Rule
60(b), the court's analysis is to be guided by three principles:
"(1) whether the default was willful, (2) whether the defendant
demonstrates the existence of a meritorious defense, and (3)
whether, and to what extent, vacating the default will cause the
nondefaulting party prejudice." New York v. Green, 420 F.3d 99,
108 (2d Cir. 2005).  To be willful, the defendant's default must
have been more than negligent.  Id.  To demonstrate the
existence of a meritorious defense, the defendant "need not
establish his defense conclusively, but he must present evidence
of facts that, if proven at trial, would constitute a complete
defense."  Id. at 109.  The lack of a meritorious defense is a
sufficient basis for a court's decision to deny a motion to
vacate a default judgment.  Id.  The court should also consider
whether the plaintiff will be prejudiced by a decision to vacate
the default judgment in ways beyond mere delay.  For instance, a
plaintiff may be prejudiced if the defendant's delay has
resulted in the loss of evidence, created increased difficulties

12

for discovery, or provided greater opportunity for fraud and collusion.  Id. at 110.  It is for the defendant to show that there is a lack of prejudice to the plaintiff.  Id. ("No error in the District Court's conclusion that defendants failed to show a lack of prejudice.").

Additionally, any motion made under Rule 60(b) must be brought within a "reasonable time," and motions under Rule 60(b)(1),(2), and (3) must be brought no more than one year after the entry of the judgment.  Fed.R.Civ.P. 60(c).  In determining whether a motion to vacate a default judgment has been brought within a "reasonable time" a court should "look at the particular circumstances of each case and balance the interest in finality with the reasons for delay."  Grace v. Bank Leumi Trust Co. of NY, 443 F.3d 180, 190 n.8 (2d Cir. 2006)(citation omitted).  With respect to motions made under Rule 60(b)(1),(2), and (3), "the fact that a motion was made barely within the one-year limit gives the court the Power to entertain it, [but] as the delay in making the motion approaches one year there should be a corresponding increase in the burden that must be carried to show that the delay was 'reasonable.'"  Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648, 656 (2d Cir. 1979).  Moreover, where a party has offered "no explanation to support its substantial delay in attempting to reopen the default judgment" a court may

find the delay unreasonable.  Id.; see also Dominguez v. U.S.,
583 F.2d 615, 617 (2d Cir. 1978).

With respect to judgments that are challenged as void,
however, the "reasonable time" requirement is given an
"exceedingly lenient" construction.  Central Vermont Pub. Serv.
Corp. v. Herbert, 341 F.3d 186, 189 (2d Cir. 2003)(citation
omitted).  In fact, it is often said that a motion to vacate a
judgment for voidness can be brought at any time.  Id.  A
judgment may be void if the court that rendered the judgment
lacked personal jurisdiction over the defendant, lacked
jurisdiction over the subject matter or entered the judgment in
a manner inconsistent with due process.  Beller & Keller v.
Tyler, 120 F.3d 21, 23 (2d Cir. 1997).

In the event that a defendant seeks to set aside a judgment
pursuant to Rule 60(b)(3) on the basis that the judgment was
procured through fraud, he must offer "clear and convincing
evidence" of the fraud or material misrepresentation.  See
Nederlandsche Handel-Masstschappij, N.V. v. Jay Emm, Inc., 301
F.2d 114, 115 (2d Cir. 1962); see also Fleming v. New York
Univ., 865 F.2d 478, 484 (2d Cir. 1989).  Furthermore, the
defendant must show that the fraud or misrepresentation
prevented him from "fully and fairly presenting his case."
State Street Bank and Trust Co. v. Inversiones Errazuriz
Limitada, 374 F.3d 158, 176 (2d Cir. 2004)(citation omitted);

14

see also U.S. v. Throckmorton, 98 U.S. 61, 65-66 (1878).
Parties may not use 60(b)(3), however, to litigate the merits of
the underlying dispute.  Mastini v. American Tel. & Tel. Co.,
369 F.2d 378, 379 (2d Cir. 1966); see also Fleming, 865 F.2d at
484.

A defendant does not waive a personal jurisdiction
objection by delaying a motion to vacate a default judgment,
even if the defendant had actual knowledge of the proceeding in
which he defaulted.  "R" Best Product, Inc. v. DiSapio, 540 F.3d
115, 123 (2d Cir. 2008).  But, when a defendant who had actual
knowledge of the proceeding seeks to challenge the judgment on
personal jurisdiction grounds, it is his burden to establish
that the court lacked personal jurisdiction over him.  See Burda
Media Inc. v. Viertel, 417 F.3d 292, 299 (2d Cir. 2005); see
also Bally Export Corp. v. Balicar, Ltd., 804 F.2d 298, 401 (7th
Cir. 1989).

Brecka seeks to vacate the default judgment on essentially
four grounds.  First, Brecka seeks to excuse his failure to
answer, to attend the December 2, 2010 conference, or to
communicate with the Court as a "mistake" and not a willful act.
Intertwined with this ground, is Brecka's argument that the
default judgment should be vacated pursuant to Rule 60(b)(3)
because it was entered as a result of Concord's fraudulent
representations to him that this action was a mere formality.

Second, Brecka contends that he has meritorious defenses to this action.  Third, Brecka argues that the judgment should be vacated because the obligation on which it is founded has already been satisfied.  Lastly, Brecka argues that the judgment is void because this Court lacked personal jurisdiction over him.

The defendant has not shown that the default judgment should be vacated.  The defendant's default was willful and his motion to vacate the default judgment has not been brought within a reasonable time.  Additionally, Brecka has failed to demonstrate that the default judgment was procured through fraud, misrepresentation or misconduct of the plaintiff, the existence of a meritorious defense to the action or that the judgment has been satisfied.  Lastly, there was personal jurisdiction over the defendant and there is no reason to find that the judgment is void for lack of jurisdiction.

Willful Default and Untimely Motion to Vacate

The record on this motion demonstrates both that Brecka's default was willful and that his motion to vacate the default judgment is untimely.[2]  Brecka received the summons and complaint on August 20, 2011, the notice of initial pretrial conference on September 7, and the Order to Show Cause for Default Judgment on

_____

[2] To the extent that Brecka argues that the motion is timely because the judgment is void for lack of personal jurisdiction over him, that argument is addressed below.

16

October 11.  Thus, by October 11, Brecka knew that a conference
with the Court had been scheduled for November 4, and that due
to his failure to answer the complaint a hearing would be held
on December 2 to determine whether a default judgment should be
entered against him.  Although Brecka was aware in 2011 that a
default judgment was being entered against him, he never
inquired into the status of this case with the Court, never
requested an extension from the Court, and did not file the
motion to vacate the default judgment until roughly a year
later, on October 19, 2012.

Brecka's opening brief and affidavit attempt to explain the
ten month gap between the entry of a default judgment and his
motion in essentially three ways.  First, Brecka contends that
he never received any information about this action other than
the complaint.  But, faced with evidence of the chain of emails
between himself and Strassberg exchanged between September 8 and
September 19, Brecka has abandoned this argument.  As these
emails demonstrate, in addition to the summons and complaint,
Brecka also received the Order setting a date for an initial
conference.  These emails also reveal that Brecka understood his
need to obtain from the Court an extension of his time to
answer, and represented that he was retaining an attorney to do
so.  In addition, there is ample evidence that Brecka was
notified that Concord was seeking a default judgment against

17

him.  First, Strassberg's October 4 email to Brecka informed
Brecka that Concord would be moving for a default judgment.
Second, the Order to Show Cause for Default Judgment was mailed
to Brecka at the same address at which Brecka received the
summons and complaint and to the same email address through
which Brecka was communicating to Strassberg.  Brecka does not
deny that the Bonita Springs address or the
Gary.Brecka@traditionalgroup.com email address are correct
addresses for him.  Instead, Brecka merely asserts that "upon
information and belief" he did not receive the Order to Show
Cause for Default Judgment.  Brecka's conclusory denial of
receipt of the Order to Show Cause is insufficient to overcome
Concord's evidence of proper delivery.

Brecka next argues that he did not file any answer because
he confused the complaint in this action with the complaint in
the New York Action and as a result did not realize he had been
named as a defendant.  This argument is belied by Brecka's own
emails.  On August 22, shortly after being served with the
summons and complaint in this action, Brecka emailed Kosta and
stated:

> I signed the papers served to me by the court, so that
> things will not be held up any longer for either of
> us.

On September 8, Brecka asked for Concord's consent to an
extension of his time to answer so he could "retain counsel and

<u>respond to the complaint</u>."  (Emphasis supplied.)  This email confirms that Brecka understood that unlike the New York Action, the complaint in this action named him as a defendant and required him to file an answer.

Finally, Brecka contends that Kosta and Kellner assured him that he did not need to "worry" about this action.  In the affidavit submitted with this motion, Brecka explains that, upon receiving a document in 2011 that he now believes to have been the complaint in this action, he questioned Kellner and Kosta about the document.  He contends that he was told "not to worry" and "that it was necessary for them to treat all guarantors equally but that they did not intend to pursue it."  These statements can be interpreted both as an explanation for why the defendant's default was not willful, and an argument that default judgment was procured through the fraudulent representations of Concord that this proceeding was not being pursued in earnest.  Both Kosta and Kellner have submitted affidavits representing that they never told Brecka that Concord did not intend to pursue this action against him.  Rather, Kosta states that in exchange for Brecka's assistance in the New York Action, Concord advised Brecka that it might consider refraining from naming him as a defendant in the New York Action.  And indeed, as explained above, Brecka was not named as a defendant in the New York Action.

Confronted with the record of his email exchange with Kosta and Strassberg, Brecka abandons his argument that Kosta assured him that he did not need to worry about this action, or that he had any conversation with any representative of Concord at the time he was served with the complaint in this action suggesting that he need not worry about the complaint.  His reply affidavit vaguely refers to assurances from Kellner but does not link them to this action or to any specific date after he was served with the complaint in this action.  Brecka's reply also fails to explain why the emails between himself, Strassberg, and Kosta contain no mention of Kellner's assurances and instead include statements by Brecka indicating his commitment to finding a lawyer and answering the complaint.  Instead, Brecka's reply brief explains that due to great disruption in his personal life, "[t]his lawsuit was one of the many things that, regretfully, he was unable to attend to."

In sum, Brecka's general assertions that Concord representatives told him that he did not need to worry about this action fall far short of the clear and convincing evidence required to vacate a default judgment pursuant to Rule 60(b)(3) given Brecka's explicit acknowledgement in at least four emails of his need to retain counsel and to file an answer.  Indeed, Brecka has not produced a single document that reflects the plaintiff's alleged assurances, and has largely ignored the

substance of his emails from the Fall of 2011 in which he acknowledges his legal duty to appear in this action.  In sum, Brecka has failed to offer a credible explanation for the ten month delay in bringing this motion to vacate the default judgment.

While a hearing to resolve disputed issues of fact would ordinarily be appropriate, none is necessary here.  The defendant does not dispute the authenticity of the documentary evidence presented by the plaintiff and his motion offers only vague assertions.  His reply papers also ignore the substance and significance of the various emails exchanged between himself, Strassberg, and Kosta, which have been described above. In light of the forgoing, a hearing would not assist the Court in resolving disputed issues of fact.

Lack of Meritorious Defense

Brecka has also failed to offer evidence of a meritorious defense to the plaintiff's action.  The defendant raises in essence two defenses to the plaintiff's claim of breach of a guaranty.  First, Brecka contends that Concord fraudulently induced him to execute the Guaranty Agreement by representing that LAG's profits from its share in the HSH program would be sufficient to repay LAG's obligations to Concord.  Second, Brecka contends that LAG's obligations to Concord under the TLS Agreement have been satisfied.  With respect to both defenses,

21

Brecka has failed to "present evidence of facts that, if proven
at trial, would constitute a complete defense" to the
plaintiff's action.  New York, 420 F.3d at 109.

First, Brecka contends that Concord engaged in fraud by
making false representations about the HSH program.  Brecka
asserts that "Concord" represented that LAG's share of the
proceeds from the HSH program would be "very high" and "would be
sufficient to repay" the loan when, in reality, the program did
not exist.  In his proposed answer, which he attaches to his
motion to vacate, Brecka does not provide any additional detail.
He pleads the following:

> 31.  At various times, Plaintiff made numerous
> misrepresentations of facts and assurances to
> Defendant Gary Brecka with the intention that
> Defendant rely on those assurances to his detriment.
>
> 32.  Among other things, Concord Capital falsely
> represented to Gary Brecka that its HSH Loan Program .
> . . would provide sufficient capital to Life Asset
> Group, LLC ("LAG") and Gary Brecka to repay the
> subject loan.  Concord Capital knew or should have
> known that neither Brecka nor LAG could repay Concord
> absent a distribution of proceeds from the HSH Loan
> Program.  Concord Capital made these representations
> knowing that they would be relied on and for the
> purpose of inducing LAG and Gary Brecka to execute the
> documents that Concord relies on in this Action.

Brecka's submissions fail to plead or show a viable defense to
the plaintiff's action for enforcement of the Guaranty
Agreement.

While a party seeking to vacate a default judgment need not

conclusively prove the existence of a meritorious defense, he must at least present evidence that, if proven at trial, would constitute a complete defense to the plaintiff's claim.   Id. The defendant has offered no documentary evidence of the plaintiff's allegedly false representations.[3]  His affidavit does not indicate who at Concord made false representations about HSH or when these false representations were made.  Indeed, his proposed answer does not even allege that a Concord representative made a statement about HSH that was known by the representative to be false.  Cf. Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1996)(elements of New York's fraudulent misrepresentation claim).  The defendant's submissions and proposed answer fail to satisfy even the pleading requirements of Federal Rule of Civil Procedure 9(b), let alone the requirements for demonstrating the existence of a meritorious defense justifying the vacation of a default judgment.  See In re Scholastic Corp Sec. Litigation, 252 F.3d 63, 69-70 (2d Cir. 2001).

     Brecka's second defense to the plaintiff's action is that

---

[3] The defendant repeatedly references Section 2.5(b)(ii) of the TLS Agreement in support of his argument.  This section reads as follows: "On each date on or after the Closing Date upon which the Borrower receives any cash proceeds from the HSH Hybrid Program, the Loan shall be prepaid by an amount equal to the amount of such cash proceedings."  This statement does not indicate that Concord told LAG or Brecka that LAG's share of the HSH proceeds would be sufficient to repay the loan.

the loan made by Concord to LAG has already been satisfied.
Brecka argues that the loan made by Concord to LAG was in
reality a stock purchase agreement and thus Concord received
LAG's stock and assets in return for $1,605,000 of the
$2,800,000 "loan" made to LAG.[4]  This result was accomplished,
Brecka contends, by LAG pledging its shares and stock as
collateral for the loan made to LAG.  This line of argument
fails for at least two reasons.

    First, the undisputed evidence is that Concord never took
control of this purported collateral.  The plaintiff has
submitted an affidavit from Kosta indicating that while Concord
had options to purchase LAG's stock, it never exercised those
options or took ownership of any LAG stock.  The affidavit
further represents that while some LAG assets served as
collateral for the loan, Concord has never foreclosed on any LAG
assets and no LAG assets have been "surrendered" to it.

    Second, to the extent the defendant is arguing that the
pledge of LAG stock and assets as collateral for the loan
relieved him of his obligation under the Personal Guaranty, this

---

[4] Brecka contends that LAG never controlled the remaining
$1,195,000 which was placed in a bank account with Wachovia Bank
and was subject to the Control Agreement.  Brecka's contention
is contradicted by the terms of the Control Agreement which
specifically provides that LAG retains control of the account
until such time as Concord submitted specific written
instructions to Wachovia Bank.  Concord has represented that no
such written instructions were ever sent to Wachovia Bank and
Brecka has not contested that representation.

argument is foreclosed by the terms of the Personal Guaranty:

> [Brecka] hereby consents and agrees . . . that
> [Brecka's] obligations under this Guaranty shall not
> be released, diminished, impaired, reduced or
> adversely affected by any of the following:
> . . .
> The taking or accepting of any other security,
> collateral or guaranty, or other assurance of payment,
> for all or any part of the Guaranteed Obligations.

Thus, in addition to the defendant's failure to bring this motion in a timely fashion, his inability to demonstrate the existence of a meritorious defense to the plaintiff's action justifies the denial of his motion to vacate the default judgment.  Although a party moving to vacate a default judgment need not conclusively establish a defense, he must do more than offer unsubstantiated assertions.  Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 18, 21 (1st Cir. 1992).

Prejudice

The defendant has made little effort to demonstrate that the plaintiff will not be prejudiced by vacating the default judgment nearly a year after it was entered.  In his motion, Brecka merely asserts that "vacating the Default Judgment will not cause Concord any prejudice because Concord is seeking to enforce a judgment that is without legal or factual basis or foundation."  This argument fails to satisfy Brecka's burden of demonstrating a lack of prejudice to the plaintiff.  See New

25

York, 420 F.3d at 110; see also Burrell v. Henderson, 434 F.3d
826, 832 (6th Cir. 2006); Hines v. Seaboard Air Line R. Co., 341
F.2d 229, 232 (2d Cir. 1965).

While neither party has made a showing of prejudice or lack
of prejudice, it is reasonable to find that the plaintiff would
suffer an incremental but significant burden having to litigate
the underlying events more than a year after it originally filed
suit.  The various agreements relevant to the parties' dispute
were executed nearly five years ago.  To the extent that the
defendant would seek to rely on his defense of fraudulent
inducement, discovery would concentrate on the memories of
Concord executives and Brecka, which can be assumed to grow less
reliable with every passing year.

Personal Jurisdiction

As a final ground for vacating the default judgment in this
case, the defendant contends that this Court did not have
personal jurisdiction over him and thus the default judgment is
void.  A default judgment rendered against an absent defendant
is void if the court that rendered the judgment lacked personal
jurisdiction over the defendant.  "R" Best Produce, Inc., 540
F.3d at 123.  While motions to vacate a default judgment
pursuant to Rule 60(b)(4) must be brought within a "reasonable
time," the reasonable time requirement is given an "exceedingly
lenient" construction when a defendant asserts a jurisdictional

26

defense.  Central Vermont Pub. Serv. Corp., 341 F.3d at 189
(citation omitted).  "[A] defendant is always free to ignore the
judicial proceedings, risk a default judgment, and then
challenge that judgment on jurisdictional grounds in a
collateral proceeding."  Transaero, Inc. v. La Fuerza Aerea
Boliviana, 162 F.3d 724, 729 (2d Cir. 1998)(citation omitted).
This principle applies to a defendant with notice of a
proceeding who defaults and then seeks to vacate the default
judgment pursuant to Federal Rule of Civil Procedure 60(b)(4).
"R" Best Produce, Inc., 540 F.3d at 123.

     Concord's complaint alleged that Brecka executed a Guaranty
Agreement in which Brecka irrevocably and unconditionally
guaranteed the punctual payment and performance of LAG's
obligations in an amount up to $750,000.  Through its complaint,
Concord sought to enforce this Personal Guaranty against Brecka.
In the Personal Guaranty, Brecka "irrevocably submit[ted] to the
jurisdiction" of this Court.

     It is well-established that "[p]arties can consent to
personal jurisdiction through forum-selection clauses in
contractual agreements."  D.H. Blair & Co., Inc. v. Gottdiener,
462 F.3d 95, 103 (2d Cir. 2006).  A forum-selection clause will
be enforced unless the clause was not "reasonably communicated
to the parties," id., or "enforcement is shown by the resisting
party to be 'unreasonable' under the circumstances."  AVC

<u>Nederland B.V. v. Atrium Inv. P'ship</u>, 740 F.2d 148, 156 (2d Cir. 1984)(citation omitted).  In addition, if the resisting party clearly demonstrates that a forum-selection clause was procured through fraud or overreaching the clause will not be upheld. <u>See</u> <u>S.K.I. Beer Corp. v. Baltika Brewery</u>, 612 F.3d 705, 711 (2d Cir. 2010); <u>D.H. Blair & Co.</u>, 462 F.3d at 103; <u>see</u> <u>also</u> <u>Jones v. Weibrecht</u>, 901 F.2d 17, 18 (2d Cir. 1990).

Brecka does not contend that he was unaware of the forum selection clause in which he consented to the jurisdiction of this Court or that inclusion of the clause in the Guaranty Agreement was procured by fraud.  He does argue, however, that his consent to the transaction between Concord and LAG was procured through fraud.  This argument is misplaced.  Brecka must offer evidence that the inclusion of the forum-selection clause itself in the Guaranty Agreement "was the product of fraud or coercion."  <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 519 n.14 (1974).  In any event, as described above, Brecka has offered insufficient evidence to suggest that anyone at Concord fraudulently induced him to enter the TLS and Guaranty agreements.  Accordingly, the defendant has not shown that the default judgment should be vacated due to voidness.

CONCLUSION

The defendant's October 19 motion to vacate the default

judgment in this case is denied.

SO ORDERED

Dated:      New York, New York
            February 27, 2013

                              _____
                                   DENISE COTE
                              United States District Judge